UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ELAINE L. CHAO, Secretary of Labor
for the United States Department of
Labor,

        Plaintiff,

    v.

PORT CITY GROUP, a Michigan
corporation, and BRUCE JOHN
ESSEX, JR., an individual,

        Defendants.
_____/

Case No. 1:04-CV-609

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Plaintiff Elaine L. Chao's and Defendants Port City Group and Bruce John Essex, Jr's competing motions for summary judgment. Also before the Court is Plaintiff's Objection to United States Magistrate Judge Ellen S. Carmody's July 29, 2005 Order compelling discovery. The Court has reviewed the filings and finds oral argument unnecessary. W.D. MICH. LCIVR 7.2(d).

**I.    BACKGROUND**

Defendant Port City Group is a six company conglomerate that produces metal and plastic component parts for end use in the automobile industry. Defendant Bruce John Essex, Jr. presides over Port City Group and manages its day-to-day operations. Defendants' employees are paid an hourly wage, but are also compensated by two different bonus schemes. The first bonus is tied to employee attendance ("Attendance Bonus"). The second bonus is given every three months during each calendar year to eligible employees ("Quarterly Bonus"). It is these bonuses that forms the basis of this lawsuit.

Plaintiff contends that the bonuses should be included in the employees' regular rate of pay when calculating overtime pay under the Fair Labor Standards Act. *See* 29 U.S.C. § 207(a)(1). Defendants dispute this contention, at least with regard to the Quarterly Bonus, and do not consider the Quarterly Bonus within their employees' regular rate of pay.[1]  After the parties' settlement negotiations broke down, Plaintiff sued to compel Defendants inclusion of the bonuses within their employees' regular rate of pay when calculating overtime pay.

## II.    DISCUSSION

### A.    Summary Judgment Standard

Deciding a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts are to be considered in a light most favorable to the non-moving party, and ". . . all justifiable inferences are to be drawn in his favor." *Schaffer v. A.O. Smith Harvestore Prod.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).

Once the movant satisfies his burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153-54 (6th Cir. 1990). The non-moving party may not rest on its pleading but must present "specific facts showing that

---

[1] Defendants concede that their Attendance Bonus violated the Act; however, they dispute that an injunctive remedy is appropriate and consider their back obligation satisfied. This discussion is taken up in greater detail in section II, B, 2. *See infra*.

there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)). It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252. Since the parties have moved for summary judgment on similar grounds, each litigant will be accorded the status of movant and non-movant when applicable.

**B.   Summary Judgment Analysis**

The Fair Labor Standards Act works to incentivize employers to hire more employees to fulfill their labor needs, rather than employing the same number of employees at increased hours; spreading employment to the many instead of concentrating it to the few. *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1176 (7th Cir. 1987). To that end, the Act mandates that whatever hours an employee works in excess of 40 hours in a given week, he is entitled to compensation at the rate of one and one-half times his regular rate of pay. 29 U.S.C. § 207(a)(1). The Act negatively defines an employee's regular rate of pay as:

> [A]ll remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include—
>
> **(1)** sums paid as gifts; payments in the nature of gifts made at Christmas time or on other special occasions, as a reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency;
>
> * * *
>
> **(3)** Sums paid in recognition of services performed during a given period if either, (a) both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior

> contract, agreement, or promise causing the employee to expect such payments regularly; or (b) the payments are made pursuant to a bona fide profit-sharing plan or trust or bona fide thrift or savings plan, meeting the requirements of the Administrator set forth in appropriate regulations which he shall issue, having due regard among other relevant factors, to the extent to which the amounts paid to the employee are determined without regard to hours of work, production, or efficiency; . . . .

\* \* \*

*Id.* at § 207(e).

### 1. The Quarterly Bonus

Defendants pay a Quarterly Bonus to employees who meet certain criteria established by Defendants' handbook. Defendants contend that their authority to issue a Quarterly Bonus was discretionary, and thus, should not be considered part of their employees' regular rate. The United States Department of Labor has promulgated interpretative regulations concerning discretionary bonuses. The pertinent regulations provide:

\* \* \*

> **(b) Discretionary character of excluded bonus.** In order for a bonus to qualify for exclusion as a discretionary bonus under section 7(e)(3)(a) the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid. The sum, if any, to be paid as a bonus is determined by the employer without prior promise or agreement. The employee has no contract right, express or implied, to any amount. If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it. Thus, if an employer announces to his employees in January that he intends to pay them a bonus in June, he has thereby abandoned his discretion regarding the fact of payment by promising a bonus to his employees. Such a bonus would not be excluded from the regular rate under section 7(e)(3)(a). Similarly, an employer who promises to sales employees that they will receive a monthly bonus computed on the basis of allocating 1 cent for each item sold whenever, is his discretion, the financial condition of the firm warrants such payments, has abandoned discretion with regard to the amount of the bonus though not with regard to the fact of payment. Such a bonus would not be excluded from the regular rate. On the other hand, if a bonus

>such as the one just described were paid without prior contract, promise or announcement and the decision as to the fact and amount of payment lay in the employer's sole discretion, the bonus would be properly excluded from the regular rate.
>
>**(c) Promised bonuses not excluded.** The bonus, to be excluded under section 7(e)(3)(a), must not be paid "pursuant to any prior contract, agreement, or promise." For example, any bonus which is promised to employees upon hiring or which is the result of collective bargaining would not be excluded from the regular rate under this provision of the Act. Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category. They must be included in the regular rate of pay.

29 C.F.R. § 778.211. As the Act and accompanying regulations make clear, fundamental to the Court's discussion of the Quarterly Bonus is whether Defendants retained discretion to issue said bonus. Defendants consider the Quarterly Bonus discretionary because of the explicit representations made to their employees *via* their employee handbook. The relevant section of the handbook reads as follows:

>BONUS ELIGIBILITY
>If the company is able to give out any type of bonus, it will be solely at the discretion of the President. **ANY AND ALL BONUSES ARE DISCRETIONARY.** This means that you should not count on a bonus as part of your income. If a quarterly bonus is administered, you must meet the eligibility requirements in order to be able to receive a bonus, the following are the criteria:
>
>  1. You must be employed for the entire quarter.
>  2. You must be employed with the company when the checks are issued.
>  3. You must have a lost time percentage of 5% or less, that is 26 hours.

Despite this seemingly unassailable reservation of discretion, Plaintiff asserts that because Defendants paid out a Quarterly Bonus to employees who met the above criteria during 27 out of the

28 quarters during which she investigated Defendants, this equates to a loss of discretion. In other words, Plaintiff contends that the routine reoccurrence of the Quarterly Bonus induces Defendants' employees "to work more steadily or more rapidly or more efficiently or remain with the firm" and is thus properly considered part of their regular rate of pay. 29 C.F.R. § 778.211(c).

Plaintiff's assertion has some support in the Federal Reporter. In *Walling v. Richmond Screw Anchor Co.*, 154 F.2d 780, 784-85 (2nd Cir. 1946), the Second Circuit Court of Appeals considered a similar bonus scheme within the framework of the Act. Even though the employer in *Richmond Screw* had the discretion to discontinue the bonuses "if and when the company finances indicated an unhealthy condition," the court found that the:

> Crucial fact [] is that in fact they were regularly paid. Although the employees knew they could not legally compel the company to make those payments, no one can doubt that the employees assumed that, in the normal course of events, the employees would receive them. That seems to us to be enough to constitute them part of the regular rate at which the men were employed.

*Id.* at 784 (citing *Walling v. Harnishfeger Corp.*, 325 U.S. 427 (1945); *Walling v. Younger-Reynolds Hardwood Co.*, 325 U.S. 419 (1945); *Walling v. Helmerich & Payne*, 323 U.S. 37 (1944)); *see also Walling v. Garlock Packing Co.*, 159 F.2d 44, 45 (2nd Cir. 1947) and *McComb v. Shepard Niles Crane & Hoist Corp.*, 171 F.2d 69, 71 (2nd Cir. 1948) (both decisions holding same as *Richmond Screw*). Other than *Richmond Screw* and its progeny, the Court knows of no other precedent that is particularly persuasive, let alone binding.[2] According to *Richmond Screw*, an employer is apparently not free under the Act to explicitly reserve to himself unfettered discretion and then send his

---

[2] The closest the Sixth Circuit Court of Appeals has come to this issue was in *Walling v. Wall Wire Products Co.*, 161 F.2d 470 (6th Cir. 1947). *Wall Wire Products* is sufficiently dissimilar and of little precedential value because the employer in *Wall Wire Products* collectively bargained with its employees to share a percentage of it profits. The effect was to nullify any employer discretion to grant a bonus. In this case there was no such agreement.

employees a mixed message by failing to ever meaningfully exercise that discretion by withholding a bonus.

In support of their Motion for Summary Judgment, Defendants submit the affidavits of Defendant Essex and Defendants' administrator Ms. Ellis-Campeau, which underscore Defendants' belief that the Quarterly Bonus was discretionary and that they have on at least one occasion withheld the Quarterly Bonus. Beyond highlighting Defendants' subjective intent, the affidavits do little to advance the Quarterly Bonus issue to summary judgment. What is of paramount importance is whether Defendants' employees assumed that, under normal circumstances, they would receive a Quarterly Bonus. *Richmond Screw*, 154 F.2d at 784. Given the fact that Quarterly Bonuses were paid with virtually rote application of the handbook criteria, this fact remains unclear. No party has offered any evidence concerning what assumptions were actually held by Defendants' employees, and consequently, summary judgment is improper for either party.[3]

The Court recognizes that Defendants may likely discontinue Quarterly Bonuses if a jury finds that Defendants' employees regarded the Quarterly Bonus as part of their regular rate of pay. The Court further recognizes that, at least outwardly, Defendants' motivation for the Quarterly Bonus appears wholly benevolent. Nevertheless, the Court is mindful and obedient to the Act and its policy of employing the many, rather than overworking the few. *Mechmet*, 825 F.2d at 1176. It is not the task of this Court to pass on the wisdom of such congressional designs nor discern whether

---

[3] Defendants have also made some reference to the fact that at least a portion of the Quarterly Bonus may qualify as a Christmas gift. *See* 29 U.S.C. § 207(e)(1). Defendants have not addressed this issue with any detail in their Motion, and consequently, the Court will deny summary judgment on that ground as well. It is simply not sufficient for a party to mention a possible argument in the most skeletal way and leave for the court the task of putting flesh on its bones. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citing *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

they remain a proper fit in our modern economy. The Court's duty is merely to give the Act its intended effect. The Court finds denying both parties' motions for summary judgment at this time discharges that duty in a manner consistent with the Act.

### 2. The Attendance Bonuses and Injunctive Relief

Defendants' Attendance Bonus was paid to employees who had perfect attendance during an entire quarter, save for certain excused absences. It is undisputed that Defendants failed to include the Attendance Bonus when calculating the employee's regular rate of pay. It is also undisputed that the Attendance Bonus should have been included in Defendants' employees regular rate of pay. *See* 29 C.F.R. § 778.211(c). In light of the foregoing, Defendants have since paid the employees back pay and changed the Attendance Bonus policy to "take th[e Attendance Bonus] issue out of controversy." (*See* Defs.' Br. in Supp. of Defs.' Mot. for Summ. J. at 8-9). Defendants seek summary judgment on that basis. Plaintiff contends the Attendance Bonus remains in controversy because Defendants have not conclusively established they have satisfied their back pay obligations (including interest) and that injunctive relief is appropriate.

Plaintiff rightfully points out that Defendants have not conclusively established that they have paid the employees the duly owed back pay with interest. In fact Defendants, due to administrative and logistic burdens, recognized this very fact.[4] (*See Id.* at 8 n.10). However, quick to cast the first stone, Plaintiff has also not submitted any evidence that conclusively establishes that Defendants have not paid the required amount. Thus, summary judgment is improper for either party at this time. Should the requisite proofs become available, the Court invites either party to again move for

---

[4] Defendants maintain they have mailed out some back pay checks and are in the process of locating remaining employees.

summary judgment on the ground that Defendants have satisfied, or failed to satisfy, their back pay obligation.

Turning to Plaintiff's request for injunctive relief, the Court observes that under the Act it has the discretion to enjoin further violations of the Act. When making this discretionary decision the Court is advised to "consider: (1) the previous conduct of the employer; (2) the current conduct of the employer; and (3) the dependability of the employer's promises for future compliance. The most important factor is the likelihood that the employer will comply with the Act in the future." *Reich v. Petroleum Sales, Inc.*, 30 F.3d 654, 657 (6th Cir. 1994). In this case, each factor counsels against injunctive relief.

No evidence suggests that Defendants' Attendance Bonus was devised out of a maligned plan to violate the Act. Moreover, Defendants quickly remedied the Attendance Bonus policy to conform with the Act and represented to the Court that they have satisfied, or will soon satisfy, their back pay obligations. Lastly, the Court is convinced that Defendants are committed to operating within the parameters of the Act and simply stumbled administratively when confronted with a complex statutory framework. Thus, the Court will deny Plaintiff's request for injunctive relief.[5]

### C. Standard Governing Plaintiff's Objection to Magistrate Judge Carmody's Order

Plaintiff's Objection to Magistrate Judge Carmody's Order compelling discovery is governed by a "clearly erroneous or contrary to law" standard of review. FED. R. CIV. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) *and O'Neil v. Appel*, 165 F.R.D. 479, 483 (W.D. Mich. 1996). In applying

---

[5] Plaintiff has also sought to enjoin Defendants' treatment of the Quarterly Bonus. Since summary judgment is improper for either party on that ground, injunctive relief will be denied as well.

this standard, the Court, like any reviewing court, will not reverse Judge Carmody's Order simply because the Court "would have decided the case differently." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985). "Rather, a reviewing court must ask whether, based 'on the entire evidence,' it is 'left with the definite and firm conviction that a mistake has been committed.'" *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

        D.      **Analysis of Plaintiff's Objection to Magistrate Judge Carmody's Order**

As indicated, Defendants employees' subjective impressions as to whether or not they regarded the Quarterly Bonus as part of their regular rate of pay controls the outcome of Plaintiff's claim on that ground. On June 10, 2005, Defendants moved to compel Plaintiff to disclose which of Defendants' employees she intended to call as witnesses and what the substance of the anticipated testimony might be. Plaintiff opposed the motion and urged that the identity of these employees was protected by the informer's privilege. On July 27, 2005, Judge Carmody heard oral argument on Defendants' motion.

Judge Carmody found that the balance of the factors in *United States v. Rovario*, 252 U.S. 53 (1957), tipped against Plaintiff's use of the informer's privilege and ordered her to comply with Defendants' discovery request. (*See* July 27, 2005 Hr'g Tr. at 18; *see also* July 29, 2005 Order). Judge Carmody also supported her decision with citation to *United States v. Julius Doochin Enter. Inc.*, 370 F. Supp. 942 (M.D. Tenn. 1973). (*See* July 27, 2005 Hr'g Tr. at 19). Faced with a similar discovery request and claimed informer's privilege under the Act, the court in *Julius Doochin* reasoned that because the informer was going to be called at trial anyways, the policy reasons supporting the privilege protecting his identity were not present. *Julius Doochin*, 370 F. Supp. at

945. Plaintiff's Objection advances three points of error: Defendants' need for the discovery is premature; Defendants have already been provided the substance of the witness employees' statements; and Defendants have no need to know the identity of the witness employees.

Each contention is belied by the fact that, as was the case in *Julius Doochin*, the employees' identities will soon be revealed when they testify at trial. Whatever expanse of time exists before trial, whether or not Defendants have the information, and Defendants' purported need is irrelevant if their identity and testimony will soon be known at trial. Furthermore, being that Defendants employees' testimony will be of a decisive nature in this case, fundamental fairness dictates that Plaintiff ought to comply with Defendants' discovery requests so they can adequately prepare for trial in a meaningful way. Thus, this Court cannot say that Judge Carmody's Order was clearly erroneous or contrary to law. For these reasons, the Court will deny Plaintiff's Objection.

### III. CONCLUSION

The Court will deny Plaintiff's Motion for Summary Judgment and Objection to Magistrate Judge Carmody's July 29, 2005 Order compelling discovery. The Court will also deny Defendants' Motion for Summary Judgment. An Order consistent with this Opinion shall issue.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>November 10, 2005 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |